Edwin Van Dorn v. Scott Hunter Mr. Stolze? Or is it Stolze? Mr. Stolze May it please the court. Bruce Stolze Sr. here to argue on behalf of the plaintiff, Eddie Van Dorn. Eddie Van Dorn was a lineman and while working on some downed power lines, he got hit by a power line and besides the damage to his face that required surgeries, he's lost abilities to taste and smell. He brought a gross negligence case against a supervisor of another crew that was working on the downed power lines. The district court granted summary judgment, finding that under Iowa law of gross negligence and the requirements of gross negligence, there were no issues of material fact that would allow a jury to make a determination in favor of the plaintiff. The appeal is brought in this particular case on the basis that the court resolved various disputed issues of fact in making those determinations and in making those determinations, therefore the jury was not allowed to be able to get to the issues that are involved. In this particular case, power lines come down throughout our country all the time. Power crews are called out to take care of these power lines and the power lines come down in different directions, but you can envision it being similar to the semicircle of this bench. And those power lines are down and they are under pressure. And this happens all the time. So there are industry methods and procedures in order to accomplish keeping the workers safe, as safe as possible as can be done. And therefore this case is not about disputed industry issues. It's an industry standard. And what ended up happening here is when you have a downed power line, it is essential to make sure everyone working on the power line is aware before lines are moved. Power lines have the electric lines and then they have ground static lines. But before those power lines can be moved, people have to be warned about the fact that you're in the process of moving them. Your brief carefully avoids the Heinrich case, which the district court relied on. It sounds to me like you're setting off to make a very persuasive negligence argument. You're going to have to tell me why your negligence argument rises to the standards Heinrich Supreme Court of Iowa requires for proof of gross negligence to avoid workers' comp-exclusivity. Because in this particular case there is a knowledge of the peril, which the district court found. The peril is the fact that someone is going to be hit by the line. The issue of whether or not there was a probability of injury in this particular case. And in that case, the testimony of the witness of the defendant in this case is, you've repeated many times that you didn't want somebody to get hurt, and I believe you. I don't think anybody disputes that, okay? I just want to put out the fact there. But don't you think the fact that Eddie was not warned, when you and your crew knew that there were people in the bite, that you're taping open a piece of safety equipment that's not supposed to be taped open, and that there's no backup safety rope placed on it, makes it almost inevitable that he got hurt. And he says, yeah. Now the question then becomes... It's just a very incomplete hindsight question. Well, but isn't that the function, Your Honor, of the jury to decide? Shouldn't the jury be allowed to make those decisions? Actually, the first question is, really, if you look at the case law, they talk about something approaching actuarial foreseeability and not just the merest of probability. If you're looking at the Jeanne case, I think the language that they use is a certainty that accidents will happen. Yes. And that is what happened, because Eddie Van... But I don't think that the answer to the question, yeah, is really enough to read all of that in. I mean, particularly when someone's looking at hindsight. I mean, it's apparent to a lay witness. If you're standing there after something has happened, they say, well, is it certain to happen? Well, it was pretty much certain to happen. The dude was standing right where the wire snapped, right? And then you want to extrapolate from that some admission that creates a fact question that the jury should get that could be determined to this sort of actuarial certainty that Iowa law requires. What would be wrong, Your Honor, with having a jury make that determination? What is it... I don't think that's really... There'd be nothing wrong with it. These are absolutely things that they could choose to send a jury. It just doesn't seem that that's consistent with Iowa's law as it relates to the workers' compensation bar. Your Honor, it is, in fact, consistent with Iowa workers' compensation law. When you look at the cases, what the Supreme Court of Iowa has basically said is whether or not you know someone in the bite is likely to be injured. That's the standard, likely to be injured. In this particular case, you have known methods of protecting that. You know that they do not... They have people in the bite, and Mr. Van Doren was at a pole working on the arresters. He's doing the actual work of removing the arresters where lines had been moved from one of the poles. He is in the bite. He is exactly where these wires are, where these wires are under tension. Therefore, he is, in fact, likely, it's probable, that he is, in fact, going to be injured where he's located. Now, these poles are 300 feet apart, right? Yes. The length of a football field. Yes. And if he's 300 feet from where the pole was being cut, why is there also not responsibility on his brother who actually cut the pole? Why isn't he charged with some responsibility when he gets up there with that chainsaw to look down 300 feet away to see if anybody's in the bite? Eddie Van Doren is the one who got injured. Whether it was his brother who engaged in the activity or someone else, Mr. Van Doren was not... Why are you putting all the blame on the foreman? Okay, let's say it wasn't his brother. Let's say it was some other employee. But this employee who was about to cut this pole with the chainsaw can look to 300 feet, the football field away, and see if somebody's in the bite. Does he not have some responsibility in this whole thing? He could possibly have been brought in for lawsuit, Your Honor. Yes, he could have. The supervisor was the one brought in because the supervisor was the one who was in charge of this. He was the only one brought in, and Heinrich makes clear there the employer. Because the employer was in control of everything, all of the supervisors who were sued were not liable for gross negligence. The supervisor... I don't see how you can distinguish that. The supervisor was the one who was in control of what actions were taking place at that time on that date, Your Honor. And the jury... The difficulty is, if we were on an appeal in which a jury had made a determination and this court was in fact deciding whether or not there was substantial evidence to support a verdict against the plaintiff, but in this particular case, all the plaintiff is saying is, since there is an admission, since there are expert witnesses who are testifying upon it, since there are factual issues that relate to this, under the rulings of inferences being given to the favor of the plaintiff, why not allow the jury to make this determination rather than determine it as a matter of law? In this particular case... In Thompson, we said the concept of wantonness involves the combination of attitudes, a realization of imminent danger coupled with a reckless disregard or lack of concern for the probable consequences of the defendant's act. And what Mr... And he said, I'd never encountered this before. Yeah, as a matter of hindsight, I obviously wouldn't have done it the same way, but he had an explanation for... That will mean, Judge... ...standpoint of why he did what he did. That will mean, Judge, that in every case, every defendant simply says, in hindsight, I wouldn't have done it this way because it wouldn't have been done that way. They can say that in every case, and plaintiffs should be given the opportunity, Your Honor, to present the issue to the jury. This isn't just tort law. This is comp exclusivity. And... You can't just argue... And the jury's... But the Iowa law allows for these issues to go... ...would have to be instructed to the jury. Yes, and the jury then would need to make that determination. The district court concluded that there was evidence sufficient to even submit it. So Mr. Hunter says in answer to a question, if you don't make sure everyone is in the clear, somebody is going to get hurt. Is that fair or unfair? I'd say that's fair. And I understand, Your Honor, when people make admissions and depositions, when people take those positions, courts can ignore them. But a person like Eddie Van Doren, who lives the rest of his life this way, and who the Iowa law says he can go to a jury, we're asking for the right to go to a jury and let the jury tell us, no, this isn't going to be the case. Instead of the issue being, we're going to make the decision as a matter of law and ignore these factual statements that are in the record. There is a substantial record. This case is, in fact, very similar to the cases that... The district court did distinguish the cases, but these cases are very similar to the cases of Larson and Swanson. In point of fact, it was known that there was danger, and in the Larson and Swanson cases, there was a direction to the employee to engage in the conduct. In this particular case, there was direction and agreement by other people to engage in conduct that endangered Mr. Van Doren, who, without notice, was doing his job, and without notice, he was supposed to get. All of those other crews relied on that notice. And without that, without that being understood, all of these linemen who go out day by day to help us get our power back do not have the protection that we believe the Iowa law gives. I'll reserve the rest of my time. Mr. Driscoll? Thank you, Your Honor. May it please the Court. Opposing counsel. I'm Kevin Driscoll. I'm here on behalf of the Appalachee defendant, Scott Hunter. We're here requesting the Court affirm the District Court's summary judgment order that properly found that the undisputed facts in this case established that Mr. Hunter had no knowledge that Mr. Van Doren's injury was probable or that Mr. Hunter consciously disregarded the injury in peril. Did the District Court assume that Mr. Hunter knew Mr. Van Doren was in the bite? No, because the undisputed facts are Mr. Hunter did not know Mr. Van Doren was in the bite. The District Court said it was a disputed fact. It said that the... I don't know what it assumed. Well, I think, Your Honor, that it's not a disputed fact, that the evidence is unequivocal that Mr. Hunter did not know that Mr. Van Doren was in the bite. The direct testimony. Well, all right. Then I don't know how to take notes. Because my notes of the District Court's opinion has him saying that acknowledging there was a dispute whether the defendant knew the plaintiff was in the bite. Correct. The parties dispute whether the defendant knew the plaintiff was in the bite. That's correct. But what I'm saying is they're disputing it without any material facts. They don't say anything. My question was what the District Court... How do we treat the District Court as... To me, if the District Court, based on having recognized the dispute, didn't assume knowledge he was in the bite, then it made an error of law under Rule 56. And that's why when you come in and say it's undisputed, that there was no knowledge, to me you're begging for reversal. That's the last thing I want to do, Judge. But it's a serious problem for me. Well, but the fact of the matter is that there's nothing in the record that the plaintiff submitted that would establish Hunter's knowledge of Van Doren in the bite. I think the Court acknowledged that the plaintiff wanted to dispute it, but there's no material issues of fact on that issue. And I think that that's the issue here, is that Hunter looked... Hunter's testimony is I looked but saw no one in the bite. Did Hunter assume there might be someone in the bite? Or did he act on the knowledge that there was no one in the bite? I think he acted on the knowledge that no one was in the bite, but that goes to the fact of the movement of the wire. There's a number of references that the wire was cut. The wire was never cut. Mr. Hunter used this latch hook, taped it open, to grab the wire to keep it under control, and he believed that he was going to be able to maintain control when they cut that telephone pole off. It didn't. When the pole got cut, the wire snapped out. It would have been used in the same fashion to keep the wire from moving. But the issue here is Hunter intended to warn when he was going to move on the wire. They weren't going to move on the wire until they had it cut off of the pole. But Hunter did not believe that the wire was going to jump out of the latch and move violently towards Mr. Van Dorn. Yeah, isn't that . . . If you look at the trial judge's opinion, the trial judge said that the facts did not clearly establish that the defendant knew that the plaintiff was in the bite. However, the defendant was aware of the risk that the wire could, upon becoming disconnected, could strike any worker who was in the bite. And so he took specific steps, that is, the tape on the hook, which he believed would take care of that issue. And so the negligence here, if you look at it, is that he believes that he has got this device in place that's going to accomplish exactly what the safety ropes are, that he's seen this wire lip that was used before that was similar in nature, and that once that he'd done that, he'd done everything he needed to do. And at this point, what you've got to do is you've got to cut the pole, and then before you remove the wire, he's going to make another sweep through the bite and make sure everybody gets away from where it is. And instead, when they cut the pole, the pressure on this tape exceeds its ability to hold this thing in place. It snaps. Correct. Those are the facts, right? And those are the facts as the court found them. And there's no way really to dispute any of those. So actually, the question is to what's the light most favorable? Well, assume that someone was in the bite right where the plaintiff was. This person has a plan to make sure that everyone's safe at the initial stage. The plan fails because it's a bad plan. Now, that sounds more like just sort of garden variety negligence to me. Like you sit there and you look at it and say, yeah, there's a risk. I'm going to try and take care of it. What I've done is trying to put something together in a way that I think is safer than safety ropes. I think that's fair, and it turns out not to be the case. Well, how is that grossly negligent as opposed to just merely negligent? I think it's just mere negligence. He's not intentionally trying to bypass a safety device. He's trying to enhance safety. His testimony is, by using this latch hook, I thought it was bigger, safer, stronger than a safety rope. So he's not consciously disregarding safety. He doesn't realize that there's this zone of imminent danger because he doesn't know that Hunter's there. And I think to the appellant's point about this question that, you know, wasn't it almost inevitable, you know, that's a hypothetical question that assumes facts, not in evidence, because basically that question is asking Mr. Hunter, if you knew everything that did happen was going to happen, wouldn't you agree you wouldn't do it that way? Well, we'd all agree with that. And it assumes facts, not in evidence, that he knew he was there, that he knew the wire was going to jump out of the latch hook. So what's the significance of this taping the what they call the safety latch? You don't call it a safety latch, but taping it open. What does that have to do with how the accident actually occurred, and what's the significance? Sure. He was trying to approximate a device called a wire lip that holds the wire in it but will allow you to take the wire out once you remove it from the pole. So he's trying to use it as a safety device, and what happens is when that pole gets cut, the wire bounces out of it because of the forces against the wire. So it's not an instance where he's removing a shield or removing a guard or directing someone to engage in unsafe practices. He thinks he's enhancing safety. But if he hadn't taped, if he had not taped the safety latch open, would it have not then jumped out? Is that the theory? That's the theory. It would not have jumped out, but then they wouldn't have been able to get the wire out of it without sending a man up to it physically and undoing the hook and then exposing him to that danger. But I think one other important thing is that Hunter never directed Van Dorn into the bite. Hunter never directed Van Dorn to cut those arresters off. Van Dorn's own supervisor did that, Duell, without checking with Hunter what he was doing. I mean, there's a number of people that could have been sued in this case that weren't if they were going to try to create a gross negligence case. And the gross negligence cases in Iowa, every one of them, you have a supervisor who directs the employee to engage in work activities that he knows are risky. The case where we've got the ripped personal protective suit, the supervisor knows that there's a rip in it and he's going to be exposed to caustic vapors. He tells them to go do it anyway. With the power PTO that's unguarded. Tells them to go do it anyway. Hunter never directs Van Dorn's activity. Hunter doesn't know what Van Dorn's doing. So I think there's a critical element here that's missing is the knowledge of Hunter with respect to any danger he's creating for Van Dorn. He doesn't realize that there's this zone of imminent danger that's being created because he doesn't know what Van Dorn's actually trying to do. In the two cases, Larson and Swanson, there's clear evidence that the supervisor knew of the risk that the employee was being exposed to, and that's missing in this case here. You've studied these cases. I haven't. Heinrich came one northwest second volume after Swanson, and yet the court didn't cite its opinion from earlier in the year. Any basis for why? I don't, but I will cite the court to the Juarez case. That's the egg-breaking machine that we've cited. It's a court of appeals. They address the Swanson and Heinrich cases, and they talk about the fact that in those instances there were directives issued to these co-employees to continue performing operations the supervisors knew would place them in harm's way. In the Juarez case, there they did not instruct Juarez or any other employee to risk injury, and they conclude that the injury occurred because of Juarez's own actions and not from performing duties in a manner prescribed by their supervisor. Van Doren's injury did not arise from engaging in duties that were prescribed by his supervisor, the defendant in this case, Hunter. And so we believe the undisputed evidence is that Van Doren's injury did not result from performing duties as dictated by his supervisor, and I think that's a key element that's missing in this case. We think the fact of the matter is that the district court correctly ruled, based on the undisputed facts, that there was not substantial evidence of every element to support a gross negligence claim. And as the courts noted, the gross negligence claims are severely restricted by the Iowa Work Comp Section 8520 by including a wanton neglect for the safety of another, and that wanton neglect requires a combination of attitudes, a realization of imminent danger, coupled with a reckless disregard for the probable consequences of those actions. And there is no substantial evidence in this record to support either of those findings or to have a jury trial on those findings. There just are insufficient material issues of fact for a trial in this case, Your Honors. I'm not seeing anything in your table of authority that sounds like what you just called the Warren's case. Is that something that's not in the briefs? No, it is, Your Honor. I apologize. It was... The Warren's case is cited on page 27 of our brief. The Warren's court found the record in district court proceedings revealed no history of accidents. Period. Yes. All right, okay. Right. And in order to... That's in Cordo Field. Yes. And it does a fairly exhaustive analysis of the... That's fine. I'm just making sure I find it. Is there anything in the record that this hook method had been used by somebody else? I know that your client had said he had seen it used. Was there anything other than his testimony that Van Dorn at some point... Not Van Dorn, but Hunter had at some point actually seen the hook being used? He had seen the latch being taped open to restrain a hook or restrain a wire, but that's the extent of it. He'd never seen a wire jump out of it like this. He'd never experienced an accident as a result of using the winch hook taped open like happened in this instance. So when you use ropes, what do you do? Do you tie the rope to the pole that's being cut and then tie the other end of the rope to some stationary object? The rope gets tied to the wire itself, and they tie that to their winch trucks, the big utility trucks. Instead of using a rope, he's still using the winch truck, but he's using the winch cable? Correct, to approximate the safety rope. The other fact of the matter is that when Mr. Van Dorn's supervisor orders him into the bite to cut these arrestors off, they take the ropes off of that wire, which they didn't need to do. And I asked Mr. Van Dorn, wouldn't that have kept the wire under control? And he said yes. And I also asked Mr. Van Dorn, wasn't Mr. Hunter exposed to the same risk of injury of this wire snapping that you were? He agreed with that. Plaintiff's expert agreed with that. All the testimony, the undisputed testimony is that Mr. Hunter and his crew were exposed to the same risk of injury as was Mr. Van Dorn by using the winch hook in this fashion. And the courts in Iowa have routinely said that where the supervisor himself is exposed to the same risk of injury, gross negligence doesn't exist because it demonstrates there was no conscious awareness of the risk of injury that could result to the plaintiff or the defendant himself due to the manner in which the work methods were engaged. So I think that the three key points are, we didn't direct his activities, we were exposed to the same risk of injury, and there was no conscious disregard for Mr. Van Dorn's safety based on my client's conduct, Your Honor. So we'd ask you affirm Judge Rose's summary judgment ruling. Thank you. Mr. Van Dorn was hit by the static wire that was released by Mr. Hunter. Had nothing to do with the wires that were disconnected at the other pole. That's a fact that Mr. Driscoll pointed out that has no relevance and it really confuses the issue. Those are live wires that were disconnected, but it is the static wire at Mr. Hunter's location that flew back and hit Mr. Van Dorn. Was it running through across all three downed poles? Yes, it ran all the way. What's up in the air? The wires are up there, but the static wire is there as well. Secondly- If the poles are down, how are the wires still in the air? They're not in there. They were on the poles, but they've been disconnected. It was the disconnecting of the wire, the static wire, the ground wire, at the Hunter site that caused him to get hit by the wire. He was flying off the top of the pole. He's on the ground or he's up in the air? He must be on the ground. He's on the ground. Nobody can really see him. He's taking off the arrestors of the downed poles. Was the football field away? Was that level ground? I believe there was a slight decline, if I recall correctly, Your Honor, about the actual ground. So if you're Hunter and the weather's standing at their pole, looking down the road in whatever direction toward Van Dorn's pole, they wouldn't have been able to see Van Dorn disconnecting the safety ropes? They may not have been able to see what exactly was going on, which is why all of the teams work in a combination to protect each other from injury, which is why there is communication before you disconnect a line. And if you look at the district court's order on page 2 of the addendum, the district court indicated the static wire was disconnected, and that was the problem with the static wire being disconnected. There was supposed to be a safety rope on it, there was supposed to be a safety latch, and there was supposed to be warning to the people because the entire group of people are in danger. And that didn't happen, and it was consciously not happening. We ask the court, allow the jury to decide this and reverse the district court. Thank you. Thank you, counsel. Case has been well briefed and argued.